UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RUBY V.,[1] | Case No. 8:19-cv-00871-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Ruby V. ("Plaintiff") filed a Complaint on May 9, 2019, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on March 18, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

On March 13, 2015, Plaintiff protectively filed an application for DIB, and on March 30, 2015, she protectively filed an application for supplemental security income ("SSI"). AR 16, 254-64. In both applications she alleged disability starting December 31, 2012. AR 16, 256, 258. On August 17, 2017, after her applications were denied initially and on reconsideration (AR 132-33, 149-50), Plaintiff, represented by counsel, testified via video before an Administrative Law Judge ("ALJ"), and a vocational expert ("VE") testified telephonically. AR 16, 40-70.

On January 23, 2018, regarding the DIB application, the ALJ found Plaintiff was not disabled through December 31, 2012, the date last insured. AR 16-31. Regarding the SSI application, the ALJ found her disabled beginning May 23, 2014. Id. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged-onset date and found she had severe impairments of asthma, depression, and anxiety. AR 20. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform a light work[3], except Plaintiff: (1) must never work in the presence of unprotected heights and hazardous machinery; (2) should avoid

---

[3] "Light work" is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

exposure to extreme temperatures, dust, chemicals, and fumes; (3) is limited to no more than frequent stooping, crouching, crawling, twisting, and bending; (4) is limited to moderately complex tasks with no public contact; (5) is limited to no more than occasional interaction with supervisors, coworkers, or the general public; and (6) is precluded from fast-paced work such as production-rate-pace jobs. AR 21-23.

The ALJ further found that since December 31, 2012, Plaintiff has been unable to perform her past-relevant work as an administrative clerk (Dictionary of Occupational Titles ["DOT"] 219.362-010). AR 28. The ALJ next found that, prior to the date last insured, Plaintiff was an individual closely approaching advanced age, but, on May 23, 2014, her age category changed to advanced age. AR 29. The ALJ found that, prior the age-category change, there were jobs that existed in significant numbers in the national economy Plaintiff could have performed, including, office helper (DOT 239.567-010), general office machine operator/photo copy machine operator (DOT 207.685-014), and mail clerk (DOT 209.587-026). AR 29-30. However, beginning the date the age-category changed, there were no jobs Plaintiff could perform. AR 30. Accordingly, the ALJ found Plaintiff was not disabled prior to May 23, 2014, but became disabled on that date and continued to be disabled through the date of the decision. AR 30. The ALJ also found Plaintiff was not under a disability at any time through December 31, 2012, the date last insured. AR 30. Thus, based on her DIB application Plaintiff was not disabled through December 31, 2012, but based on her SSI application she was disabled beginning May 23, 2014. AR 30.

Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6. This action followed.

///

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

B. **Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See

Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):[4]

Issue No. 1: Whether the ALJ properly considered the evidence concerning the number of jobs; and

Issue No. 2: Whether the ALJ's decision is supported by substantial evidence.

In both disputed issues, Plaintiff challenges the ALJ's step-five determination. In Issue No. 1, Plaintiff contends that the DOT does not describe or classify social interaction with people, and because the VE could not "guarantee" that the representative occupations would not require more than occasional contact with supervisors, he thus could not describe an occupation Plaintiff could sustain. Jt. Stip. 8-9, 14-15. Plaintiff also contends that the ALJ did not consider the consistency of the VE's testimony with

---

[4] Plaintiff challenges the denial of her DIB application, for the period prior to May 23, 2014, only. See Jt. Stip. at 4.

County Business Patterns ("CBP") and other evidence Plaintiff submitted post-hearing. Jt. Stip. at 10-12, 15-16. In Issue No. 2, Plaintiff contends that the ALJ also did not properly consider information from the Department of Labor's O*NET OnLine, Job Browser Pro, and other sources. Jt. Stip. at 16-20, 24-26. Finally, Plaintiff contends that VE did not provide any basis for a reasonable person to conclude that the representative occupations existed in the numbers he stated. Id.

### A. Applicable Law

The Commissioner bears the burden of "show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." Tackett, 180 F.3d at 1100 (citation omitted). There is no bright-line rule for what constitutes a significant number of jobs. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The Commissioner's burden can be met: "(a) by the testimony of a VE, or (b) by reference to the Medical-Vocational Guidelines ['the Grids'] . . .." Tackett, 180 F.3d at 1101.

The Grids are matrices of "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When properly applied, the Grids "render[ ] a conclusion of either 'disabled' or 'non-disabled'" based on the number of jobs "that the Administration has determined exist in significant numbers in the national economy." Barnes v. Berryhill, 895 F.3d 702, 706 (9th Cir. 2018); 42 U.S.C. § 423(d)(1)(A).

When the claimant cannot perform substantially all the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the Grids are used as a "framework" for decision-making, unless

there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. SSR 83-12, 83-14.

An ALJ may take administrative notice of any reliable job information, including information provided by a VE. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "A VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required." Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)). "Given its inherent reliability, a qualified [VE]'s testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." Ford, 950 F.3d at 1160; see also Buck, 869 F.3d at 1051.

**B.  Analysis**

During the administrative hearing, the ALJ presented a hypothetical containing Plaintiff's limitations, including "no public contact" and "no more than occasional interaction with supervisors and coworkers." AR 65-66. The VE concluded that a hypothetical person with that RFC could perform the office helper position (DOT 239.567-010) with 86,600 jobs available nationally, general office machine operator position, one example being photocopying machine operator (DOT 207.685-014), with 266,000 jobs available nationally, and the mail clerk, non-postal position (DOT 209.587-026) with 62,000 jobs available nationally. AR 66-67.

Plaintiff's counsel asked the VE whether there were jobs the VE "could guarantee that there would only be occasional contact with supervisors?" AR 68. The VE answered that he could not guarantee anything. Id. The ALJ then struck the answer because it was an improper question, explaining that the VE's testimony was based on the DOT and that VEs do not guarantee any aspect of a job. Id. Counsel then asked how the DOT classifies social

interaction with any other type of individual with respect to the jobs identified, to which the VE responded, "It doesn't." Id. Counsel also asked the VE if he "checked [his] numbers against County Business Patterns?" AR 68-69. The ALJ directed the VE not to answer that question because the VE's testimony was based on national numbers, not county numbers. AR. 69. The ALJ asked counsel to rephrase, and counsel then asked if the VE "add[ed] up the numbers that County Business Patterns" provides to see if it matched the national numbers, and the VE said he did not, explaining that there are hundreds of counties in the nation. AR 69-70. Finally, the VE testified that, in addition to the DOT, he relied on the OASYS program[5], and his testimony was consistent with the Occupational Outlook Handbook ("OOH"). AR 69-70.

In the decision, the ALJ found that prior to May 23, 2014, if Plaintiff had the RFC to perform a full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. AR 29. However, because Plaintiff's ability to perform all or substantially all the requirements of that level of work was impeded by additional limitations, the ALJ explained that she consulted the VE. AR 29. The ALJ detailed the VE's testimony, including the representative occupations and the job numbers in the national economy, and concluded it was consistent with the DOT. AR 30. Based on that testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national

---

[5] The parties do not provide any information as to what the "OASYS" program is in the Joint Stipulation. It appears to be a software program that identifies occupations that could be consistent with an employee's qualifications and abilities. See Patrick v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 638 F. Supp. 2d 1195, 1211 (S.D. Cal. 2009); Dionida v. Reliance Standard Life Ins. Co., 50 F. Supp. 2d 934, 937 (N.D. Cal. 1999).

economy. AR 30. Accordingly, under this "framework" analysis, the ALJ concluded that Plaintiff was "not disabled" prior to May 23, 2014. AR 30.

Plaintiff has failed to demonstrate error in this detailed step-five determination. During the hearing, the VE testified that a hypothetical person matching Plaintiff's RFC could perform the representative occupations, and that they existed in significant numbers in the national economy. AR 66-67. As mentioned, the hypothetical specifically included "no more than occasional interaction with supervisors and coworkers," and the VE even confirmed that limitation during questioning. AR 65-66. Plaintiff does not challenge the limitations in the hypothetical question or the RFC.[6] Accordingly, that testimony is substantial evidence supporting the ALJ's determination and meets the Commissioner's burden. See Ford, 950 F.3d at 1160 (VE testimony is inherently reliable and ordinarily sufficient "by itself" to support step five); Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001); Aragon v. Colvin, 2016 WL 1257785, at *4 (C.D. Cal. Mar. 30, 2016) ("VE testimony, by itself, constitutes substantial evidence when in response to a complete hypothetical."); Migliore v. Colvin, 2013 WL 3935879, at *2 (C.D. Cal. July 29, 2013) (VE's testimony was substantial evidence supporting step-five determination because VE "identif[ied] a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy" (quoting Osenbrock)). Moreover, although the VE provided some information about how he reached the job

---

[6] The single variation between the hypothetical and the RFC is the RFC finds Plaintiff "limited to no more than occasional interaction with supervisors, coworkers, or the general public." AR 23 (emphasis added). The mention of occasional interaction with the general public is superfluous considering the RFC already limited Plaintiff to "no public contact," a limitation that was also posed in the hypothetical. Compare AR 23 with 65-66.

numbers (AR 69-70), he was not required to explain his methodology. See Ford, 950 F.3d at 1158-59; Aragon, 2016 WL 1257785 at *4; Zalesny v. Comm'r of Soc. Sec., 2014 WL 4418215, at *3 (E.D. Cal. Sept. 5, 2014).

Plaintiff's challenge that the VE could not "guarantee" the representative occupations would not require more than occasional contact with supervisors, and the ALJ's attendant ruling related to that testimony, seeks precision beyond the relevant standard of review. Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation omitted); Lingenfelter, 504 F.3d at 1035. The VE's testimony and reliance on the DOT meets that very low bar. See Ford, 950 F.3d at 1159 (VE's testimony need only clear the "low substantial evidence bar"); Olsen v. Astrue, 2009 WL 982580, at *1 (D. Or. Apr. 10, 2009) (VE need not testify with certainty to support step-five determination).

Plaintiff does not contend that the VE's testimony is in "obvious or apparent" conflict with the DOT or contradicts the Medical-Vocational Guidelines. See, e.g., Ford, 950 F.3d at 1160; Buck, 869 F.3d at 1051-52; Wagner v. Berryhill, 2018 WL 3956485, at *5 (C.D. Cal. Aug. 14, 2018) ("The DOT's silence does not create a conflict."). Instead, she relies on various other sources. Regarding County Business Patterns, again, although not required divulge his underlying methodology, the VE provided an explanation as to why he did not rely on that resource. AR 69-70. Plaintiff has failed to show that this was insufficient, or that the VE was otherwise required to add up each county's data to support his national numbers. See, e.g., Beltran, 700 F.3d at 389 (explaining that the "'significant number of jobs' can be either regional jobs (the region where a claimant resides) or in several regions of the country (national jobs)" (emphasis in original)); Dawn H. v. Saul, 2020 WL 1939345, at *5 (D. Or. Apr. 22, 2020) (if the court finds either the national or regional

numbers significant, then it must uphold the ALJ's decision).

After the hearing, Plaintiff cited additional sources in letters to the ALJ and the Appeals Council, including Bureau of Labor Statistics, the Job Browser Pro, O*Net, OOH, and an email from SkillTRAN.[7] AR 365-82, 384-88. However, she has not shown that any of these sources are binding on this Court or the Agency. See, e.g., Wendei L. P., 2020 WL 433365 at *1 (vacating order reversing ALJ's decision because court erroneously relied on SkillTRAN job listing, which included more limitations than the DOT); Wagner, 2018 WL 3956485 at *6 (ALJ not obligated to address VE's deviation from other sources, such as O*NET or OOH). Aragon, 2016 WL 1257785 at *3 (noting that private Job Browser Pro software program is not referenced in the list of published sources recognized as authoritative by Social Security regulations); Schoux v. Colvin, 2016 WL 3194988, at *3 (N.D. Cal. June 9, 2016) (rejecting argument that the Agency is bound by the CBP and OOH; "the regulations simply identify the C[BP] and OOH as examples of materials the Commissioner may consider, . . . [they] nowhere indicate that either of these sources are definitive or controlling").

Finally, Plaintiff argues that the ALJ did not address aspects of her post-hearing submissions, but she has failed to show that the ALJ was required to do more to resolve the step-five issue and to meet the substantial evidence standard. See, e.g., Biestek, 139 S. Ct. at 1154; Jaquez v. Berryhill, 2019 WL 2868926, at *10 (S.D. Cal. July 2, 2019) ("District courts . . . have concluded that the ALJ has no obligation to reconcile conflicts between VE testimony and . . . non-DOT sources [such as CBP, OOH, or O*NET]."); Beamesderfer

---

[7] Wendei L. P. v. Comm'r of Soc. Sec., 2020 WL 433365, at *1 (W.D. Wash. Jan. 27, 2020) (describing SkillTran as a manual authored by a private company that purports to rely on the DOT).

v. Berryhill, 2018 WL 2315956, at *6 (C.D. Cal. May 18, 2018) ("the guidelines do not require the ALJ to resolve conflicts between VE testimony and other vocational publications or information" and "[t]here is simply no requirement that an ALJ must address each [post-hearing memorandum] objection [to a VE's testimony] in a discrete manner.").

At best, Plaintiff presents an alternate interpretation of the numbers of jobs available for the identified occupations, which is insufficient to undermine the VE's testimony. See Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (internal quotation marks and citation omitted)); Molina, 674 F.3d at 1111; see also, e.g., Aragon, 2016 WL 1257785 at *5 (collecting cases uniformly rejecting lay interpretation and analysis of Job Browser Pro job numbers). Reversal is not warranted.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: May 08, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

13